UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>AMBER MCDERMOTT LAND TRUST,<br><br>    Debtor. | CHAPTER 7<br><br>CASE NO. 19-63309 SMS |
| MIDFIRST BANK,<br>ITS SUCCESSORS AND/OR ASSIGNS,<br><br>    Movant,<br>vs.<br><br>AMBER MCDERMOTT LAND TRUST,<br>Debtor,<br>AMBER MCDERMOTT aka AMBER<br>HENDERSON, Co-Debtor<br>and S. GREGORY HAYS, Trustee,<br><br>    Respondents. | CONTESTED MATTER<br><br><br>JUDGE: SAGE M. SIGLER |

## NOTICE AND ASSIGNMENT OF HEARING

    NOTICE IS HEREBY GIVEN that a motion for relief from the automatic stay has been filed in the above-styled case seeking an order for relief from the automatic stay. In the event a hearing cannot be held within thirty (30) days from the filing of the motion for relief from the automatic stay as required by 11 U.S.C. Section 362, Movant waives this requirement and agrees to the next earliest possible date, as evidenced by signature below. If a final decision is not rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. The undersigned consents to the automatic stay remaining in effect with respect to Movant until the court orders otherwise.

    HEARING will be held on the 18th day of December, 2019, at 10:00 a.m., in Courtroom 1201, United States Courthouse, Atlanta Division, Richard B. Russell Building, 75 Ted Turner Drive, S.W., Atlanta, Georgia.

    Your rights may be affected by the court's ruling on these pleadings. You should read these documents carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views on the motion, then

you and/or your attorney must attend the hearing. You may file a written response to the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, Atlanta, Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

Within three days of the date of this notice, Movant's attorney, or a pro se Movant, shall serve the motion and this notice upon the debtor, trustee and their attorneys of record, and shall file a certificate of service within three days of service. BLR 9007-2 NDGa.

Respectfully submitted this __19th__ day of November, 2019.

/s/ Laura Suggs
**LAURA SUGGS**
Attorney for Movant
5565 Glenridge Connector, Suite 350
Atlanta, GA  30342
 (770)392-0041
Georgia State Bar No. 141702
lsuggs@campbellandbrannon.com

**CAMPBELL & BRANNON, LLC**
Glenridge Highlands II
5565 Glenridge Connector, Suite 350
Atlanta, Georgia 30342
(678) 443-6454 (phone)
(770) 396-2171 (fax)
lsuggs@campbellandbrannon.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>AMBER MCDERMOTT LAND TRUST,<br><br>Debtor. | CHAPTER 7<br><br>CASE NO. 19-63309 SMS |
| MIDFIRST BANK, ITS SUCCESSORS AND/OR ASSIGNS,<br><br>Movant,<br>vs.<br><br>AMBER MCDERMOTT LAND TRUST, Debtor,<br>AMBER MCDERMOTT aka AMBER HENDERSON, Co-Debtor<br>and S. GREGORY HAYS, Trustee,<br><br>Respondents. | CONTESTED MATTER<br><br>JUDGE: SAGE M. SIGLER |

**MOTION FOR RELIEF FROM STAY**

COMES NOW, MIDFIRST BANK, ITS SUCCESSORS AND/OR ASSIGNS, a creditor in the above-styled Chapter 7 proceeding, and respectfully moves this Honorable Court for an Order lifting the automatic stay with regard to the real property upon which holds a security interest and shows in support thereof the following:

1.

This is a Motion under Section 362(d) of the Bankruptcy Code for relief from the existing stay.

2.

The Movant is the holder of a Security Deed which describes certain real property purportedly owned by Debtor; a copy of the Security Deed and Assignment are attached hereto and marked Exhibit "A". Said real property is security for a Promissory Note held by Movant, and commonly known as 1250 Matt-Moore Court, Lithia Springs, GA 30122 (hereinafter "Collateral").

3.

The Debtor filed this Chapter 7 petition on August 23, 2019. The Debtor is in default in payment of the monthly installments of principal and interest under said Promissory Note. The Debtor has missed nineteen (19) payments through the month of September, 2019. The default total is $22,437.03.

4.

The unpaid principal balance is $133,150.11, with interest being due thereon as indicated by the said loan documents. The fair market value listed is not listed in Debtor's Schedules. The property was sold on August 11, 2003 for $132,900.00.

5.

Because of the Debtor's past defaults and/or clear inability to make all required payments, Movant is not adequately protected.

6.

For the above and foregoing reasons, Movant asserts sufficient cause exists to waive the requirement of Bankruptcy Rule 4001(a)(3), so that Movant may immediately enforce and implement an order granting relief from the automatic stay.

7.

Because the Security Deed so provides, the Debtor is responsible for Movant's attorney's fees in pursuing legal actions such as this.

8.

Movant requests it be permitted to exercise all rights and remedies with respect to the Security Deed and underlying debt and to contact the Debtor via telephone or written correspondence

regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements or foreclosure-related activities.

WHEREFORE, Movant prays for an Order relieving it from the Section 362 stay, authorizing Movant to proceed with all state law rights and remedies with respect to the Security Deed and underlying debt, including recovering possession of the Collateral and undertaking foreclosure and dispossessory actions, for reasonable attorney's fees, that Movant, at its option, be permitted to contact Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements, or foreclosure-related activities, for waiver of 4001(a)(3) and for such other and further relief as this Court deems just and equitable.

/s/ Laura Suggs
**LAURA SUGGS**
Attorney for Movant
5565 Glenridge Connector, Suite 350
Atlanta, GA  30342
 (770)392-0041
Georgia State Bar No. 141702
lsuggs@campbellandbrannon.com

**CAMPBELL & BRANNON, LLC**
Glenridge Highlands II
5565 Glenridge Connector, Suite 350
Atlanta, Georgia 30342
(678) 443-6454 (phone)
(770) 396-2171 (fax)
lsuggs@campbellandbrannon.com

```
Doc ID:   000152640012 Type: GLR
Filed: 08/11/2003 at 11:14:00 AM
Fee Amt:  Page 1 of 12
Douglas County Georgia
Cindy Chaffin Clerk Superior Court
BK 1806 PG 686-697
```

RETURN TO:

STEPHEN E. TANNER, P.C.
*Real Estate Closing Attorneys*
245 TOWNPARK DRIVE, SUITE 420
KENNESAW, GA 30144
TEL: 678-797-0232  FAX: 678-797-0256

This Instrument was prepared by:
WESTMINSTER MORTGAGE CORPORATION
1777 N. E. EXPRESSWAY, SUITE 145
ATLANTA, GEORGIA 30329
770-451-1285

WHEN RECORDED, MAIL TO:
WESTMINSTER MORTGAGE CORPORATION
1777 N. E. EXPRESSWAY, SUITE 145
ATLANTA, GEORGIA 30329

Order Number:
Loan Number:

GEORGIA INTANGIBLE TAX PAID
$ 396.00  DATE 10-9-03
CINDY W. CHAFFIN, CSC

(Space Above This Line For Recording Data)

**State of Georgia**

# SECURITY DEED

FHA Case Number:
105-1100864-703 -

THIS SECURITY DEED ("Security Instrument") is given on **May 15, 2003**.
The Grantor is **AMBER HENDERSON**
and whose address is **1250 MATT-MOORE COURT, LITHIA SPRINGS, GEORGIA 30122**

("Borrower").

This Security Instrument is given to **WESTMINSTER MORTGAGE CORPORATION** ,
which is organized and existing under the laws of **GEORGIA**,
and whose address is **3915 CASCADE ROAD, SUITE 200, ATLANTA, GEORGIA 30331**    ("Lender").

Borrower owes Lender the principal sum of **ONE HUNDRED THIRTY-ONE THOUSAND EIGHT HUNDRED TWELVE and no/100**
Dollars (U.S. **$131,812.00**).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **June 1, 2033**.
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to the Lender and Lender's successors and assigns, with power of sale, the following described property located in **DOUGLAS** County, Georgia:

**LEGAL ATTACH**

Parcel Identification Number:

which has the address of   **1250 MATT-MOORE COURT**
**LITHIA SPRINGS, GEORGIA 30122**    ("Property Address");

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, t[ogether with all the] improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or h[ereafter a part of the] property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing [is referred to in this] Security Instrument as the "Property."

**EXHIBIT A**

FHA Georgia Security Deed - 4/96
Page 1 of 6
IDS, Inc. - (800) 554-1872
3-368 L85 HENDERSON 051503
OLOOKGROOVERSLAKEU1P1 29.161.163
WESTMINSTER 12

Borrower(s) Initial(s) _____

12

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
Third, to interest due under the Note;
Fourth, to amortization of the principal of the Note; and
Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause

1806 0688

undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**
    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
        (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
        (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.
    **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.
    **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.
    **(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall

FHA Georgia Security Deed - 4/96

IDS, Inc. - (800) 554-1872

Page 3 of 6

Borrower(s) Initial(s) _____

1806 0689

be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

FHA Georgia Security Deed - 4/96

Page 4 of 6

IDS, Inc. - (800) 554-1872

Borrower(s) Initial(s) _____

1806 0690

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**21. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
(Check applicable box(es)).

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☒ Adjustable Rate Rider |
| ☒ Planned Unit Development Rider | ☐ Growing Equity Rider | ☒ Other: Waiver of Borrower's Rights Rider |

–WAIVER OF BORROWER'S RIGHTS
–CLOSING ATTORNEY'S AFFIDAVIT
–FORECLOSURE CLOSING DISCLOSURE

FHA Georgia Security Deed - 4/96

Page 5 of 6

IDS, Inc. - (800) 554-1872

Borrower(s) Initial(s) 

BK 1806 0691

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____          _____ (Seal)
Damyan C Fitto                                                              AMBER HENDERSON                    -Borrower
Unofficial Witness

                                                                            _____ (Seal)
                                                                                                                -Borrower

_____          _____ (Seal)
Notary Public,                                                                                                  -Borrower

[Notary Seal: PAMELA K. HECHT, Cobb County, Georgia, Commission Expires April 26, 2005]

FHA Georgia Security Deed - 4/96
                                        Page 6 of 6
IDS, Inc. - (800) 554-1872

BK    PG
1806  0692

*Loan Numbe*
*FHA Case Number:* 105-1100804-703 -

# FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **15th** day of **May, 2003**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **WESTMINSTER MORTGAGE CORPORATION** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**1250 MATT-MOORE COURT
LITHIA SPRINGS, GEORGIA 30122**

(Property Address). The Property is a part of a planned unit development ("PUD") known as:

**THE OVERLOOK AT GROOVER'S LAKE**

(Name of Planned Unit Development Project)

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

/s/ Amber Henderson (Seal)                                                            (Seal)
**AMBER HENDERSON**  Borrower                                                         Borrower

---

**FHA - MULTISTATE PUD Rider**                                                        7/91
IDS, Inc. - (800) 554-1872

BK    PG

1806  0693

Loan Number:
MIN:

FHA Case Number:
105-1100864-703 -

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this **15th** day of **May, 2003**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument"), of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to

**WESTMINSTER MORTGAGE CORPORATION**

(the "Lender") of the same date and covering property described in the Security Instrument and located at:

**1250 MATT-MOORE COURT
LITHIA SPRINGS, GEORGIA 30122**
(Property Address)

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Date**

The interest rate may change on the **1st** day of **October, 2004**, and on that day of each succeeding year. "Change Date" means each date on which the interest rate could change.

**(B) The Index**

Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. As used in this Rider, "Secretary means the Secretary of Housing and Urban Development or his or her designee." Lender will give Borrower notice of the new Index.

**(C) Calculation of Interest Rate Changes**

Before each Change Date, Lender will calculate a new interest rate by adding a margin of **THREE** percentage points (**3.000%**) to the Current Index and rounding the sum to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in paragraph (D) of this Rider, this rounded amount will be the new interest rate until the next Change Date.

FHA Multistate ARM Rider 10/95

IDS, Inc. - (800) 554-1872

Page 1 of 2
Borrower(s) Initial(s) _____

BK    PG
1806  0694

**(D) Limits on Interest Rate Changes**

The existing interest rate will never increase or decrease by more than **ONE** percentage point (1.000%) on any single Change Date. The interest rate will never be more than **FIVE** percentage points (5.000%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

**(E) Calculation of Payment Change**

If the interest rate changes on a Change Date, Lender will calculate the amount of monthly payment of principal and interest which would be necessary to repay the unpaid principal balance in full at the Maturity Date at the new interest rate through substantially equal payments. In making such calculation, Lender will use the unpaid principal balance which would be owed on the Change Date if there had been no default in payment on the Note, reduced by the amount of any prepayments to principal. The result of this calculation will be the amount of the new monthly payment of principal and interest.

**(F) Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate and monthly payment amount. The notice must be given at least 25 days before the new monthly payment amount is due, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the new monthly payment amount, (vi) the Current Index and the date it was published, (vii) the method of calculating the change in monthly payment amount, and (viii) any other information which may be required by law from time to time.

**(G) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs (C) and (D) of this Rider will become effective on the Change Date. Borrower shall make a payment in the new monthly amount beginning on the first payment date which occurs at least 25 days after Lender has given Borrower the notice of changes required by paragraph (F) of this Rider. Borrower shall have no obligation to pay any increase in the monthly payment amount calculated in accordance with paragraph (E) of this Rider for any payment date occurring less than 25 days after Lender has given the required notice. If the monthly payment amount calculated in accordance with paragraph (E) of this Rider decreased, but Lender failed to give timely notice of the decrease and Borrower made any monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request that any excess payment, with interest thereon at the Note rate, be applied as payment of principal. Lender's obligation to return any excess payment with interest on demand is not assignable even if this Note is otherwise assigned before the demand for return is made.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)                    _____ (Seal)
**AMBER HENDERSON**        -Borrower                                                   -Borrower

**FHA Multistate ARM Rider 10/95**

Page 2 of 2

IDS, Inc. – (800) 554-1872

EXHIBIT "A"

BK      PG
1806  0695

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 628 OF THE 18TH DISTRICT, 2ND SECTION , DOUGLAS COUNTY, GEORGIA, BEING KNOWN AS LOT 65 OF THE OVERLOOK AT GROOVER'S LAKE, UNIT 1, PHASE ONE, AS PER PLAT RECORDED AT PLAT BOOK 29, PAGE(S) 161-163 AND ALL REVISIONS OF SAID PLAT RECORDED AS OF THE DATE OF RECORDING OF THIS DEED, IF ANY, DOUGLAS COUNTY, GEORGIA RECORDS, SAID PLAT AND ALL REVISED PLATS, IF ANY, BEING INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE FOR A MORE COMPLETE DESCRIPTION OF CAPTIONED PROPERTY AND BEING IMPROVED PROPERTY KNOWN AS 1250 MATT-MOORE COURT, LITHIA SPRINGS, GA 30122 ACCORDING TO THE PRESENT SYSTEM OF NUMBERING HOUSES IN DOUGLAS COUNTY, GEORGIA.

*Amber Henderson 5/15/03*

3-368

BK    PG
1806  0696

# WAIVER OF BORROWER'S RIGHTS RIDER

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; **THIS MEANS THAT MY FAILURE TO MEET EVERY CONDITION OF THE MORTGAGE LOAN MAY RESULT IN THE LOSS OF MY PROPERTY THROUGH FORECLOSURE**, (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH OF THIS DEED, AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_Amber Henderson_  5/15/03
**AMBER HENDERSON**    -Grantor

_Darryan C Jitp_

_____
-Grantor

_Notary Public_
Pamela K. Hecht
My Commission Expires
APR. 26 2005
Cobb County, Georgia

IDS, Inc.                                                                 10/94

GEORGIA -

BK      PG

GRANTOR: AMBER HENDERSON

1806   0697

LENDER: WESTMINSTER MORTGAGE CORPORATION

DATE OF SECURITY DEED: May 15, 2003

## WAIVER OF BORROWER'S RIGHTS RIDER

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_____ 5/15/03 (Seal)
AMBER HENDERSON

_____ (Seal)

_____ (Seal)

_____ (Seal)

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appears the undersigned the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me                                                                    on the date set forth above.

_____                                    _____
Notary Public         Closing Attorney

BY: PAMELA K. HECHT
CLOSING ATTORNEY
FOR: STEPHEN E. TANNER, P.C.

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan though foreclosure.

_____ 5/15/03           _____
AMBER HENDERSON       Date                    Date

IDS, Inc.                                                                                           10/04

(Page 1 of 1)

BK    PG
2061  0633

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 628 OF THE 18TH DISTRICT, 2ND SECTION, DOUGLAS COUNTY, GEORGIA, BEING KNOWN AS LOT 55 OF THE OVERLOOK AT GROOVER'S LAKE, UNIT 1, PHASE ONE, AS PER PLAT RECORDED AT PLAT BOOK 29, PAGE(S) 161-163 AND ALL REVISIONS OF SAID PLAT RECORDED AS OF THE DATE OF RECORDING OF THIS DEED, IF ANY, DOUGLAS COUNTY, GEORGIA RECORDS, SAID PLAT AND ALL REVISED PLATS, IF ANY, BEING INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE FOR A MORE COMPLETE DESCRIPTION OF CAPTIONED PROPERTY AND BEING IMPROVED PROPERTY KNOWN AS 1250 MATT-MOORE COURT, LITHIA SPRINGS, GA 30122 ACCORDING TO THE PRESENT SYSTEM OF NUMBERING HOUSES IN DOUGLAS COUNTY, GEORGIA.

When Recorded Return To:
CitiMortgage, Inc.
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

CitiMortgage Loan No
CitiMortgage Loan No



Doc ID: 010379990001 Type: ASGN
Recorded: 08/22/2016 at 09:30:00 AM
Fee Amt: $7.00 Page 1 of 1
Douglas County Georgia
TAMMY M HOWARD Clerk Superior Court
BK 3414 PG 601

## ASSIGNMENT OF SECURITY DEED

**CORRECTIVE ASSIGNMENT: THIS ASSIGNMENT IS BEING RECORDED TO UPDATE THE SIGNATURE/NOTARY SECTION OF A PREVIOUSLY RECORDED ASSIGNMENT, DATED 07/23/2015 RECORDED 08/07/2015 IN BOOK 3316 PAGE 910.**

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **CITIMORTGAGE, INC. SUCCESSOR BY MERGER TO ABN AMRO MORTGAGE GROUP, INC.**, WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, O'FALLON, MO 63368, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Security Deed with all interest secured thereby, all liens and any rights due or to become due thereon to **MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION**, WHOSE ADDRESS IS 999 NW Grand Blvd., Suite 100, Oklahoma City, OK 73118, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Security Deed is executed by **AMBER HENDERSON** to **WESTMINISTER MORTGAGE CORPORATION** and recorded in Deed **Book 1806, Page 686 and Instrument # 000152640012** in the office of the Clerk of the Superior Court of **DOUGLAS** County, **Georgia**.

IN WITNESS WHEREOF, the undersigned has hereunto set its hand on 8/12/2016 (MM/DD/YYYY).

CITIMORTGAGE, INC. SUCCESSOR BY MERGER TO ABN AMRO MORTGAGE GROUP, INC.

By: _____
Jessica Barreres
VICE PRESIDENT

By: _____
Kristopher Sandberg
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

Signed, sealed and delivered in the presence of the below named witness:

_____
Rebecca Pascarella    Witness

STATE OF FLORIDA    COUNTY OF PINELLAS
Sworn to (or affirmed) and subscribed before me on 8/12/2016 (MM/DD/YYYY), by Jessica Barreres and Kristopher Sandberg as VICE PRESIDENT and VICE PRESIDENT, respectively of CITIMORTGAGE, INC. SUCCESSOR BY MERGER TO ABN AMRO MORTGAGE GROUP, INC., who is (are) personally known by me.

_____
Cynthia Albano
Notary Public - State of FLORIDA
Commission expires: 08/01/2020

CYNTHIA ALBANO
Notary Public - State of Florida
My Comm. Expires August 1, 2020
Commission # GG001222

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
CMOAV 395723591 -- GA CORRECTIVE   DOCR T0416085814 [C-1] FRMGA1_CITI

*D0017458513*

SCANNED

SEP 02 2016

Tammy M. Howard
Clerk Superior Court
Douglas County, GA

BANKRUPTCY NO. 19-63309 SMS

CHAPTER 7

JUDGE SAGE M. SIGLER

CERTIFICATE OF SERVICE

I, LAURA SUGGS, of Campbell & Brannon, LLC, Glenridge Highlands II, Suite 350, 5565 Glenridge Connector, Atlanta, GA 30342, do hereby certify:

That I am more than eighteen (18) years of age and:

That on the __19th__ day of <u>November</u>, 2019, I served a copy of the within NOTICE AND ASSIGNMENT OF HEARING together with the "MOTION FOR RELIEF FROM STAY" filed in this bankruptcy matter on the respondent(s) in this bankruptcy matter by depositing a copy thereof in the United States Mail with adequate postage affixed thereon addressed to the said respondent(s) at:

Amber McDermott Land Trust
1250 Matt Moore Court
Lithia Springs, GA  30122

Amber McDermott aka Amber Henderson
1250 Matt Moore Court
Lithia Springs, GA  30122

S. Gregory Hays
Chapter 7 Trustee
Hays Financial Consulting
2964 Peachtree Road
Atlanta, GA  30305

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on 11/19/2019          By:     _/s/ Laura Suggs_
       (date)                                   **LAURA SUGGS**